IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| CORY HEDRICK ) | |
| ) | |
| Plaintiff, ) | Civil Action |
| ) | Number:_____ |
| v. ) | |
| ) | Jury Demanded |
| G.UB.MK CONSTRUCTORS, a joint venture ) | |
| Between URS CORPORATION, WILLIAMS ) | |
| PLANT SERVICES, LLC and WORLEY ) | |
| PARSONS GROUP, INC. | |
| | |
| Defendants. | |

## COMPLAINT

Now comes Plaintiff, Cory Hedrick, by and through counsel, and for his Complaint against the defendants states as follows:

### I. NATURE OF THE CLAIMS

1. This is an action for discrimination, sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964 and the Tennessee Human Rights Act.

### II. JURISDICTION and VENUE

2. Jurisdiction in this Court is founded upon the general jurisdiction of 28 U.S.C. §1131 for federal questions arising under the Constitution, laws or treaties of the United States and 28 U.S.C. §1343(a)(4).

3. The Eastern District of Tennessee at Knoxville is the proper venue for this action pursuant to 28 U.S.C. §1391 (b)(1) and (b)(2) because this is the District and the Division in which the defendant performs some of its operations, in which the plaintiff resides, and in which a substantial part of the events or omissions giving rise to the claims occurred.

4. Mr. Hedrick's claims presented herein pursuant to the Tennessee Human Rights Act arise out of the same operative facts as his claims presented pursuant to Title VII of the Civil Rights Act, as amended. This Court therefore has jurisdiction over his claims presented herein

under the Tennessee Human Rights Act pursuant to 28 U. S. C. § 1367.

### III. CONDITIONS PRECEDENT

5. Mr. Hedrick timely contacted an Equal Opportunity Counselor with the federal agency, Tennessee Valley Authority (hereinafter "TVA"), to report his claims of discrimination and retaliation, for the wrongful actions of both TVA personnel and employees of the defendant G.UB.MK Constructors (hereinafter "GUBMK"). Mr. Hedrick also timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission and with the Tennessee Human Rights Commission against defendant GUMBK on January 12, 2012. On July 9, 2012, the EEOC issued its Dismissal and Notice of Right to Sue Letter. Mr. Hedrick files this Complaint within ninety (90) days of his receipt of the EEOC's dismissal. Thus, all conditions precedent to filing suit in this Court have been met.

### IV. PARTIES

6. Plaintiff, Cory Hedrick is a resident of Knox County, Tennessee, residing at 562 Murray Drive, Knoxville, Tennessee 37912.

7. Defendant GUBMK is a joint venture between defendant URS Corporation (hereinafter "URS", is a non-Tennessee corporation, headquartered at 600 Montgomery Street, 26th Floor, San Francisco, California 94111); defendant Williams Plant Services, LLC (hereinafter "Williams", is a non-Tennessee limited liability company owned by Williams Industrial Services Group, LLC, which is a non-Tennessee limited liability company headquartered at 100 Crescent Centre Parkway, Suite 1240, Tucker, Georgia 30084) and defendant Worley Parsons Group, Inc. (hereinafter "Worley", is a Delaware Corporation with a principal place of business at 2675 Morgantown Road, Reading, Pennsylvania 19607).

8. Defendant GUBMK maintains an office location at 1302 Topside Road, Louisville, Tennessee 37777. On information and believe, defendant GUBMK employs more than fifteen (15) natural persons unrelated to the principal owners thereof, and is therefore, subject to both Title VII of the 1964 Civil Rights Act, as amended and the Tennessee Humans Rights Act.

9. As the parties engaged in the joint venture, URS, Williams and Worley are vicariously liable for the wrongful acts or omissions of GUBMK.

## V. FACTS

10. At all times relevant, the defendant GUBMK was the plaintiff's employer.

11. At all times relevant, defendant GUBMK was a joint venture engaged in by defendants URS, Williams and Worley.

12. Mr. Hedrick is an African-American male.

13. Mr. Hedrick was employed by defendant GUBMK to work at TVA's Kingston Fossil Plant on March 10, 2011. Mr. Hedrick began as a laborer on the "de-water" side of the operation. Mr. Hedrick's employment was terminated by the defendant GUBMK on September 29, 2011.

14. Throughout the course of his employment with GUBMK, Mr. Hedrick consistently met the legitimate expectations of his employer.

15. Mr. Hedrick was the only African-American working the de-water side of the Kingston Fossil project. Almost immediately upon his employment, he was subjected to an atmosphere of discrimination based on his race. He was also subjected to sexual harassment. Throughout his time on the job, there has been a pattern of racial discrimination and sexual harassment such as to create a hostile work environment. When he brought this racial discrimination and sexual harassment to the attention of his supervisors at GUBMK and TVA, the hostile work environment was then complicated by retaliatory actions against him. The tone of discrimination on the job site was pervasive, continual and interfered with his ability to carry out his job duties

16. Shortly after he began work, and certainly by April 2011, Mr. Hedrick was subject to racially discriminatory remarks by Jimmy Thomas, a/k/a "Truckie", who was a TVA Teamster Foreman. Some, but not all of these comments, included:

a. When Mr. Hedrick asked to borrow Truckie's pen and whether this was a Cross pen, Truckie responded in front of co-workers that it was not and that the only cross he had was one to burn in Mr. Hedrick's yard;

b. In front of Mr. Hedrick and his co-workers, Truckie asked what "PONTIAC" stands for then said, "poor old nigger thought it was a Cadillac;"

c. Truckie said in front of Mr. Hedrick and his co-workers that he was going to make up T-shirts and bumper stickers that said "don't re-nig 2011", referring to not re-electing an African-American President;

d. Truckie said in front of Mr. Hedrick and his co-workers that President Obama needed to end up like Martin Luther King, that is, assassinated;

e. Truckie referred to the workers of Middle Eastern descent as "sand niggers."

f. Truckie told Mr. Hedrick that he needed to smile so he could be seen in the early morning hours;

g. Truckie bragged that he could get Mr. Hedrick or others fired and that when it happened he would "tell you I ****** you on the way out the gate."

Similar comments by Truckie were essentially a daily occurrence.

17. Another co-worker known as Elvis called Mr. Hedrick "cracker" on a daily basis. This same person told Mr. Hedrick he called him this because he "can't call him the n-word."

18. In addition to the racially discriminatory remarks, Mr. Hedrick was subjected to sexually inappropriate comments by a co-worker named Melissa Cupp, a/k/a Missy, whose brother-in-law is in some position of authority with GUBMK. On an almost daily basis, in Mr. Hedrick's presence, Missy told male co-workers to "suck my ****". She also expressed to the males on the job that because of her family connections she was essentially untouchable, could say whatever she wanted without repercussion and could even take their jobs away. Mr. Hedrick found these comments highly inappropriate and offensive. At the July 4, 2011 company cookout, Missy directly threatened Mr. Hedrick, telling him she would cause the loss of his job because she was connected. The threat that she could take her co-workers' jobs,

4

combined with the inappropriate sexual nature of these comments, created a hostile work environment for Mr. Hedrick.

19. On approximately June 6, 2011, Mr. Hedrick hurt his back attempting to lift a huge rock. The site rules require that two workers be used to move these rocks because they are so large. There is also equipment available to use for this. Mr. Hedrick was ordered to move these rocks with no assistance from other people or with equipment. When he reported the injury to his Laborer Foreman Johnny Hall, he was instructed not to go to the nurses' stations. Mr. Hall also told him that Brian Green of TVA said that Mr. Hedrick should be happy to get $20 per hour to pick up rocks and that if he was unable to perform the job he should "get his check." In other words, he would be fired. No one else was made to move these rocks alone. This was discrimination was based on Mr. Hedrick's race. His attempt to report the violation of company rules to his GUBMK supervisor was met with the threat of losing his job.

20. In approximately mid-July, 2011, an operator named Dwayne, a/k/a "Red", was making racially inappropriate remarks on the bus in front of co-workers, saying that because Mr. Hedrick was black he did not have to come to work and could do whatever he wanted. Mr. Hedrick told Dwayne and the others riding the bus that he was tired of all the racial comments and wanted them to stop. Mr. Hedrick also reported the incident to his superiors, who failed to take appropriate action to stop Dwayne's slurs. Within a few days, Dwayne made additional derogatory racial comments, such as referring to certain music as "jungle music." On another occasion, for example, Dwayne told Mr. Hedrick to "give us all your women" because the black men had taken all the white women. Dwayne told him to cull out the ugly ones because he, Dwayne, "did not want a big lip ugly one."

21. On numerous occasions, a co-worker named Justin addressed Mr. Hedrick by starting to say "ni" as if beginning to say "nigger", then laughing and saying, "Oh, I can't say that."

22. Mr. Hedrick reported this and other discriminatory behavior to Johnny Hall, the Labor Foreman. Although Mr. Hall held a meeting with the laborers in perhaps late July or early

5

August to tell them there was "zero tolerance" for joking because some people did not like it. However, Mr. Hall added the retaliatory threat that there had better not be any drama, either by "joking" or by reporting the "joking." Mr. Hall made it clear that employees had better not even report misconduct or discrimination or they themselves lose their jobs for creating "drama."

23. There was a frequently played game on site called "grab games" wherein the workers on site grabbed one another's crotch or gouged each other. Mr. Hedrick told other employees on numerous occasions that he would not play this game because it was inappropriate and extremely offensive. These games and Mr. Hedrick's displeasure with them were well known to Mr. Hedrick's supervisors, who failed to take action to stop them.

24. As a result of the ongoing racially discriminatory problems, the sexually inappropriate comments and the constant concern of reprisal for opposing discriminatory practices, in approximately late July, Mr. Hedrick finally asked to be transferred to the other side of the pond to work under David Ward in hopes that it would remove him from much of the hostility. At the time, he was working approximately one hundred hours per week. The transfer resulted in a reduction in work hours to approximately forty hours per week. In essence, the continual discrimination, harassment and retaliation resulted in a constructive discharge because Mr. Hedrick felt forced to remove himself from the situation as best he could, although it meant considerably less income to him.

25. On August 12, 2011, while riding the van on the job site, Truckie told Mr. Hedrick in earshot of his co-workers, "I don't like black people and I'm pretty sure I hate them." Mr. Hedrick again reported this to his superiors.

26. On approximately August 29, 2011, Brian Greene of TVA told Mr. Hedrick to put the August 12, 2011 incident in writing. Mr. Hedrick prepared a written statement, which was provided to Randy Calloway at GUBMK and to Brian Green on August 31, 2011.

27. After Mr. Hedrick made this written report, TVA began to take retaliatory steps against him. First, Brian Green told Mr. Hedrick's new foreman, David Ward, to get rid of him and a co-worker whom Brian Green believed had been encouraging Mr. Hedrick to pursue this

6

complaint. Mr. Green told Mr. Ward to "get rid of the troublemakers", Mr. Hedrick and this co-worker. Mr. Ward refused. Brian Green has also told two foreman, Ben West and Travis McCulkey, that they need to cover up what has been happening with Mr. Hedrick.

28. On September 15, 2011, Mr. Hedrick had a meeting with Jerry Patton of Labor Relations concerning these problems. Mr. Hedrick also sought relief through Human Resources and communicated in September 2011 with Renee Gray in that office.

29. On September 26, 2011, Mr. Hedrick initiated the TVA EEO Counseling Process. Three days later on September 29, 2011, he was laid off in retaliation by GUBMK, which was trying to appease its own customer, TVA, at the expense of its employee, Mr. Hedrick.

## VI. CAUSES OF ACTION

30. The atmosphere and incidents described above, among others, created a hostile work environment on the basis of racial discrimination.

31. The atmosphere and incidents described above, among others, created a hostile work environment arising from sexual harassment.

32. This hostile work environment and his employer's failure to intervene and take corrective action forced Mr. Hedrick to volunteer to work on the other side of the pond, which in turn resulted in a dramatic loss of income.

33. When Mr. Hedrick sought to protect himself or to seek redress for the hostile work environment, defendant GUMBK failed to take corrective action.

34. When Mr. Hedrick sought to protect himself or to seek redress for the hostile work environment, defendant GUMBK retaliated against Mr. Hedrick by laying him off indefinitely simply to appease its own customer, TVA.

35. These actions constitute violations of Title VII of the Civil Rights Act of 1964, as amended, and of the Tennessee Human Rights Act.

WHEREFORE, now having fully stated his Complaint against the defendants, the plaintiff respectfully requests that the Court grant the following relief:

1. Enter judgment for the plaintiff against the defendants; declare that the acts or omissions of GUBMK are illegal and in violation of Title VII of the Civil Rights Act of 1964 and of the Tennessee Human Rights Act;

2. Enjoin the defendant GUBMK from further discriminatory and retaliatory and other employment practices in violation of the law;

3. Reinstate the plaintiff with all back pay, benefits, increments and financial adjustments, including interest, to which he is entitled; and/or in the alternative, award the plaintiff front pay;

4. Award the plaintiff compensatory damages for pain and suffering and emotional distress in an amount to be determined by a jury;

5. Award the plaintiff reasonable attorney's fees and litigation expenses, the costs of this cause, and discretionary costs;

6. Award the plaintiff punitive damages, to the extent permitted by law;

7. Award pre-judgment interest, to the extent permitted by law;

8. Award the plaintiff such further relief as this Court deems just, proper, and equitable;

9. Empanel a jury to try this cause.

Respectfully submitted this 8th day of October, 2012.

**RAMSEY, ELMORE, STONE & CAFFEY, PLLC**

By: /s/ Wynne du M. Caffey
Wynne du M. Caffey (BPR #014876)
5616 Kingston Pike, Suite 301
Knoxville, Tennessee 37919
865.766.0056
Attorneys for Plaintiff
Cory Hedrick